# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 10, 2021

Lyle W. Cayce
Clerk

No. 20-10936

Jim S. Adler, P.C.; Jim Adler,

    *Plaintiffs—Appellants*,

*versus*

McNeil Consultants, L.L.C., *doing business as* Accident Injury Legal Center; Lauren Von McNeil; Quintessa Marketing, L.L.C., *doing business as* Accident Injury Legal Center,

    *Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-2025

Before Jones, Southwick, and Costa, *Circuit Judges*.
Leslie H. Southwick, *Circuit Judge*:

    Plaintiffs allege that Defendants purchased trademark terms as keywords for search-engine advertising, then placed generic advertisements that confused customers as to whether the advertisements belonged to or were affiliated with the Plaintiffs. The district court dismissed the complaint for failure to state a claim and denied Plaintiffs' motion for leave to amend

No. 20-10936

the complaint. We REVERSE the dismissal, VACATE the denial of leave to amend, and REMAND for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Because this is an appeal from a Rule 12(b)(6) dismissal, we recount the facts as alleged in Plaintiffs' complaint. Plaintiffs are Jim S. Adler P.C., a personal injury law firm in Texas, and Jim Adler, the firm's founder and lead attorney (collectively, "Adler"). Adler has offices in Houston, Dallas, San Antonio, and Channelview and employs approximately 300 people, including 27 lawyers.

Adler spends significant amounts of money to market his law practice. In his marketing on television, radio, and billboards, Adler has consistently used several trademarks, including JIM ADLER, THE HAMMER, TEXAS HAMMER, and EL MARTILLO TEJANO (collectively, the "Adler marks").

Adler also uses these marks in internet advertisements. Adler purchases Google "keyword ads" using the Adler marks as search terms. When a consumer performs a Google search using an Adler mark as a search term, Adler's advertisements appear alongside the results produced by the search engine's algorithm.

The Defendants are two entities, McNeil Consultants, LLC and Quintessa Marketing, LLC, both of which do business as Accident Injury Legal Center, and their sole owner, Lauren Von McNeil (collectively, "McNeil"). McNeil operates a lawyer-referral website and call center. McNeil solicits and refers personal injury cases to lawyers with whom McNeil has a referral agreement that provides for compensation for referrals.

Like Adler, McNeil advertises on the internet. Also like Adler, McNeil purchases Google keyword ads for the Adler marks. This ensures that an advertisement for McNeil's services appears when a user performs a Google search using an Adler mark as a search term. McNeil bids increasingly higher amounts to ensure that her advertisements appear next to or before Adler's advertisements. McNeil's advertisements "do not identify a particular lawyer or law firm as the source of the advertisement. Instead, the advertisements are designed to display generic terms that consumers might associate with any personal injury firm."

McNeil purchases what is known as a "click-to-call" advertisement. If a user clicks on the advertisement using a mobile phone, the advertisement causes the user's phone to make a call rather than visit a website. McNeil's representatives answer the telephone using a generic greeting. The complaint alleges that the ads "keep confused consumers, who were specifically searching for Jim Adler and the Adler Firm, on the phone and talking to [McNeil's] employees as long as possible in a bait-and-switch effort to build rapport with the consumer and ultimately convince [the consumer] to engage lawyers referred through [McNeil] instead."

Adler sued McNeil, alleging claims for trademark infringement in violation of the Lanham Act and claims under Texas law. McNeil moved to dismiss the complaint for failure to state a claim.

A magistrate judge recommended granting McNeil's motion. The magistrate judge construed Adler's claims as based solely on McNeil's purchase of the Adler marks as keywords for search-engine advertisements. He found that the allegations regarding the bait-and-switch scheme were "conclusory."

The magistrate judge also concluded that Adler could not plead a likelihood of confusion as a matter of law because McNeil's advertisements

No. 20-10936

are generic and do not incorporate the Adler marks. He recommended that the district court decline to exercise supplemental jurisdiction over Adler's state law claims.

Adler objected to the magistrate judge's findings, conclusions, and recommendation. Adler also filed a motion for leave to amend the complaint and a proposed second amended complaint. In that motion, Adler explained that he commissioned a double-blind survey of 400 Texas residents. That survey purportedly shows that "between 34% and 44% of participants clicked McNeil's ad believing it to be put out by, affiliated or associated with, or approved by Adler."

The district court adopted the findings, conclusions, and recommendation of the magistrate judge and dismissed the complaint. The court denied Adler's motion for leave to amend the complaint on the grounds of futility. The court concluded that the Lanham Act claims in the proposed second amended complaint would fail as a matter of law, even if amended, because they would be "based solely on the purchase of [Adler's] trademarks as keywords for search engine advertising" and because they did not visibly incorporate Adler's trademarks. Adler appealed.

## DISCUSSION

*I. Dismissal*

We review *de novo* a district court's ruling on a motion to dismiss under Rule 12(b)(6). *Wampler v. S.W. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010). In our review, we "accept all well-pleaded facts as true and draw all reasonable inferences in favor of the nonmoving party." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (*en banc*). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as

4

true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).

Adler has alleged claims for trademark infringement in violation of Sections 32 and 43 of the Lanham Act, which are codified at 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a). Section 32 creates a cause of action for infringement of registered marks; Section 43 creates a cause of action for infringement of unregistered marks. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 n.8 (5th Cir. 2010). The same elements apply to both causes of action. *Id.* at 235–36 & n.8.

To plead a claim for trademark infringement in violation of the Lanham Act, a plaintiff must allege that: "(1) [the plaintiff] possesses a legally protectable trademark and (2) [the defendant's] use of this trademark 'creates a likelihood of confusion as to source, affiliation, or sponsorship.'" *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). For purposes of the motion to dismiss, McNeil does not dispute the ownership or validity of the Adler marks, nor does McNeil dispute the use of the Adler marks. The sole issue is whether Adler adequately alleged a likelihood of confusion.

### A. *Likelihood of confusion and search-engine advertising*

A likelihood of confusion is "[t]he gravamen for any action of trademark infringement." *Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs Inc.*, 41 F.3d 223, 225 (5th Cir. 1995) (quoting *Marathon Mfg. Co. v. Enerlite Prods.*, 767 F.2d 214, 217 (5th Cir. 1985)). To evaluate whether there is a likelihood of confusion, our circuit uses a non-exhaustive list of factors known as the "digits of confusion." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). The initially identified digits are: "(1) the type of trademark; (2) mark similarity; (3) product similarity;

(4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Id.* Besides being simply examples, those eight digits also are fact-specific and flexible, and "[n]o digit is dispositive." *Id.*

For trademark infringement claims in the context of internet searches, plaintiffs often allege a specific type of confusion known as initial interest confusion, as Adler has done here. Initial interest confusion is confusion that "creates initial consumer interest, even though no actual sale is finally completed as a result of the confusion." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 204 (5th Cir. 1998). We have held that initial interest confusion is actionable under the Lanham Act. *Id.* at 193, 204.

We have not yet had an opportunity to analyze initial interest confusion in the context of search-engine advertising, but we find some useful guidance. In one nonprecedential opinion,[1] we analyzed initial interest confusion in the context of so-called "meta tags," which are "essentially programming code instructions given to on-line search engines." *Southwest Recreational Indus., Inc. v. FieldTurf, Inc.*, No. 01-50073, 2002 WL 32783971, at *7 & n.27 (5th Cir. Aug. 13, 2002). Meta tags are "normally invisible to the Internet user," but they "are detected by search engines and increase the likelihood that a user searching for a particular topic will be directed to that Web designer's page." *Id.* at *7 n.27 (quoting *Nat'l A-1 Adver., Inc. v. Network Sols., Inc.*, 121 F. Supp. 2d 156, 164 (D.N.H. 2000)). Because meta tags direct internet traffic and are invisible to the internet user (absent the user taking additional steps), meta tags are similar to keyword advertising.

---

[1] We discuss *Southwest Recreational* here notwithstanding its nonprecedential value. We do so because of the dearth of relevant cases — published or unpublished — in this circuit, and the nuances of the opinion's discussion of the issues are informative. For similar reasons, we also discuss a few Ninth Circuit opinions.

*See Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1034 (9th Cir. 2004) (Berzon, J., concurring).

The claim in *Southwest Recreational* was that the defendant's use of trademark terms in meta tags on its website violated the Lanham Act because such use created initial interest confusion. *Southwest Recreational Indus., Inc.*, 2002 WL 32783971, at *7. A jury found against the plaintiff on this claim, and the district court denied the plaintiff's request for a permanent injunction. *Id.* at *2. On appeal, the plaintiff argued that the district court erred because "meta tagging another company's trademark necessarily constitutes trademark infringement." *Id.* at *7. We rejected that argument. In support, we cited Ninth Circuit cases and explained that "[t]he meta tag cases in which our sister circuits have found trademark infringement involve either evidence of customer confusion or evidence that the meta tags were used illegitimately." *Id.* (discussing *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1061–65 (9th Cir. 1999) and *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 804 (9th Cir. 2002)). Finding no evidence of either, a panel of this court held that "the district court's refusal to find trademark infringement was not clearly erroneous." *Id.* at *8.

Since then, the Ninth Circuit has continued to refine its understanding of confusion in the context of internet-search cases. In one opinion, that court held that the use of trademarks as keywords for search-engine advertisements could create initial interest confusion if consumers searching for trademark terms initially believe that "unlabeled banner advertisements" are links to sites that belong to or are affiliated with the trademark owner. *Playboy Enters., Inc.*, 354 F.3d at 1025–27. A separate concurrence urged the court to distinguish between claims alleging confusion and those alleging distraction:

> There is a big difference between hijacking a customer to another website by making the customer think he or she is

> visiting the trademark holder's website (even if only briefly), which is what may be happening in this case when the banner advertisements are not labeled, and just distracting a potential customer with another choice, when it is clear that it is a choice.

*Id.* at 1035 (Berzon, J., concurring).

The Ninth Circuit eventually adopted Judge Berzon's concurrence, concluding that "it would be wrong to expand the initial interest confusion theory of infringement beyond the realm of the misleading and deceptive to the context of legitimate comparative and contextual advertising." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1148 (9th Cir. 2011). The author of a leading treatise also agrees with this approach. *See* J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25A:8 (5th ed. 2021 Update). That author offered an analogy:

> [A]ssume that [a] person shopping for a car types in a search engine the word TOYOTA and finds on the search results web page a clearly labeled advertisement for VOLKSWAGEN. This occurred because, hypothetically, Volkswagen purchased from the search engine the keyword "Toyota." If that computer user then ultimately decides to buy a VOLKSWAGEN instead of a TOYOTA, that is not a purchase made by mistake or as a result of confusion. If that ad and link is clearly labeled as an advertisement for VOLKSWAGEN, it is hard to see how the web user and potential car buyer is likely to be confused by the advertising link.

*Id.* Conversely, "[i]nitial interest confusion could occur only if the web user mistakenly thought she was going to a web site about TOYOTA cars when she clicked on the keyword link for VOLKSWAGEN. That would depend on how clearly labeled was the advertising link for VOLKSWAGEN." *Id.*

We agree with *Southwest Recreational*, the Ninth Circuit opinions, and the treatise author that in the context of internet searches and search-engine

advertising in particular, the critical issue is whether there is consumer confusion. Distraction is insufficient.

### B.     Adler's claims

We now turn to Adler's trademark infringement claims. As a threshold issue, Adler argues that because the likelihood of confusion element requires a fact-dependent evaluation, whether it has been alleged cannot be decided on a motion to dismiss. We agree that the likelihood of confusion element requires a fact-specific and contextual inquiry, *see Xtreme Lashes, LLC*, 576 F.3d at 227, but that does not mean that it can never be decided at the motion to dismiss stage. Where the factual allegations regarding consumer confusion are implausible, for example, a district court may dismiss a complaint on the basis that a plaintiff failed to allege a likelihood of confusion. *See, e.g.*, *Eastland Music Grp., LLC v. Lionsgate Ent., Inc.*, 707 F.3d 869, 871 (7th Cir. 2013); *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 860-61 (9th Cir. 1996).

This is not such a case. Adler alleges that McNeil's advertisements use generic text and are not clearly labeled as belonging to McNeil. When McNeil's advertisements appear in response to an internet search of the Adler marks, Adler alleges that a consumer is likely to believe that the unlabeled advertisements belong to or are affiliated with Adler.

Adler further alleges that McNeil's use of click-to-call advertisements exacerbates this confusion. Instead of being directed to a clearly labeled website, users who click on McNeil's advertisement are connected by telephone to a call center. McNeil employees answer the phone without identifying who they are, then seek to build a rapport with the customer before disclosing McNeil's identity. Thus, for the initial portion of the conversation, callers are unaware that they are not talking to an Adler representative.

In determining that Adler's claims failed, the district court first concluded that Adler's claims were based "solely on the purchase of Plaintiffs' trademarks as keywords for search engine advertising." The court determined that the allegations regarding the bait-and-switch scheme were conclusory and, apparently for that reason, declined to consider them. We disagree and find that Adler made specific factual allegations describing how the use of the Adler marks as keyword terms — combined with generic, unlabeled advertisements and misleading call-center practices — caused initial interest confusion. This pleading included factual matter beyond the mere purchase of trademarks as keywords for search-engine advertising, and the district court should have considered those allegations.

Second, the district court concluded that Adler could not plead a likelihood of confusion as a matter of law because McNeil's advertisements were generic. It is true that the Lanham Act does not protect generic terms against infringement. *See Small Bus. Assistance Corp. v. Clear Channel Broad., Inc.*, 210 F.3d 278, 279 (5th Cir. 2000). Adler, though, has not alleged trademark infringement solely on the basis of the generic text of the advertisements. Instead, he has alleged trademark infringement based on McNeil's use of the Adler marks, the ownership and validity of which is not disputed. The generic nature of McNeil's advertisements is relevant because it enhances rather than dispels the likelihood of initial interest confusion.

Third, the district court concluded that Adler's claims fail as a matter of law because McNeil's use of the Adler marks is not visible to the consumer. We find no Fifth Circuit authority for such a rule of law, and we disagree with it. Such a rule would undermine the requirement that, in evaluating whether use of a trademark creates a likelihood of confusion, no single factor is dispositive. *See Xtreme Lashes, LLC*, 576 F.3d at 227.

No. 20-10936

In support of its conclusion that the use of a trademark must be visible to a consumer, the district court[2] relied on *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242–49 (10th Cir. 2013). In that case, though, the Tenth Circuit explicitly avoided deciding whether a Lanham Act claim requires that the use of a trademark be visible to the consumer. The district court in the case had observed that a user who sees sponsored advertisements has no way of knowing whether the defendant reserved a trademark or a generic term. *Id.* at 1242–43. The district court explained that "it would be anomalous to hold a competitor liable simply because it purchased a trademarked keyword when the advertisement generated by the keyword is the exact same from a consumer's perspective as one generated by a generic keyword." *Id.* at 1243.

The Tenth Circuit noted that the argument had "some attraction" but then stated that "if confusion does indeed arise, the advertiser's choice of keyword may make a difference to the infringement analysis even if the consumer cannot discern that choice." *Id.* The Tenth Circuit's reasoning reflects that the absence of the trademark could be one but not the only factor to consider in evaluating the likelihood of confusion. Ultimately, that court concluded that it "need not resolve the matter because 1–800's direct-infringement claim fails for lack of adequate evidence of initial-interest confusion." *Id.*

We conclude that whether an advertisement incorporates a trademark that is visible to the consumer is a relevant but not dispositive factor in determining a likelihood of confusion in search-engine advertising cases.

Adler's complaint contains sufficient factual matter, accepted as true, to state a Lanham Act claim that is plausible on its face. *See Iqbal*, 556 U.S.

---

[2] The discussion of *1-800 Contacts* appears in the magistrate's findings, conclusions, and recommendation, which the district court adopted.

at 678. We express no opinion on the merits of Adler's claims, which would require, among other things, an evaluation of the digits of confusion and any other relevant factors. *See Xtreme Lashes, LLC*, 576 F.3d at 227.

## II.  *Motion for leave to amend*

Where a district court denies leave to amend on the basis of futility, as the district court did here, we review that decision *de novo*. *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016).

Adler requested leave to amend his complaint to add evidence of actual consumer confusion. The district court denied the motion for leave to amend, concluding that any amendment would be futile because Adler's claims failed as a matter of law. In light of our conclusion as to the sufficiency of the current complaint, we VACATE the order denying leave to amend. Whether an amendment is still requested is a decision for Adler, and whether to allow it is for the district court to reconsider.

We REVERSE the order dismissing the complaint under Rule 12(b)(6), VACATE the order denying leave to amend, and REMAND for further proceedings.